UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert Vincent Snowden, Jr., | Civ. No. 10-4516 (JNE/JJG) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Time Safe, Inc., Timothy Duke Armstrong, Gary Charley, and Thomas McInerny, | |
| Defendants. | |

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Plaintiff's Amended Motion to Enforce Settlement, for Attorney's Fees, and for an Order to Show Cause why Defendants are not in Contempt (ECF No. 58). The matter was referred to this Court for a report and recommendation by the Honorable Joan N. Ericksen, United States District Judge, pursuant to 28 U.S.C. § 636. Jeff Alden appeared on behalf of Plaintiff Robert Vincent Snowden, Jr. David Albright appeared on behalf of all Defendants. As set forth fully below, the Court recommends that Plaintiff's motion be granted in part and denied in part.

### I. Background

At the outset, the parties unequivocally acknowledged that this case is done. The parties negotiated a settlement and signed the settlement agreement, and neither party disputes that there is a binding agreement that completely disposes of this matter. Indeed, this case has been conditionally dismissed, with Judge Ericksen retaining jurisdiction for the sole purpose of overseeing the completion and execution of the settlement arrangements. (*See* Order, March 29,

2012, ECF No. 49.) One of the stated reasons for retaining jurisdiction was to allow either party to "seek enforcement of the settlement terms." (*Id.*)

Because the only issues before the Court relate to the enforcement of the parties' settlement, the questions presented are narrow. First, the Court must determine whether each party has complied with the terms of the signed settlement agreement and, if not, what deficiencies remain. Second, the Court must address whether Plaintiff is entitled to fees for Defendants' alleged deficiencies. Accordingly, the Court will address only the facts as they concern the settlement, except where necessary to frame the issues.

In this lawsuit, Plaintiff sought control of Time Safe, Inc. ("Time Safe"), a privately-held company in which he had heavily invested. Time Safe owns U.S. Patent No. 6,135,277 (the "'277 patent") which claims a vacuum re-sealable display and storage case which holds stores such as high-end guitars. Plaintiff alleged various corporate malfeasances in connection with the conduct of Time Safe's Board of Directors. After discovery commenced, and at the Court's suggestion, the parties engaged in settlement discussions. They settled the matter on their own and on December 14, 2011, at the request of the parties, the Court held a status conference at which the material terms of the settlement agreement were read into the record.[1] After the parties agreed on the material terms of the settlement, they engaged in a flurry of letter-writing and agreement-editing, which led to yet another telephone conference with this Court on February 9,

---

[1] One vexing aspect of the settlement agreement, Paragraph 11, acknowledged the possibility that some of Defendants' legal fees could be paid in stock belonging to Defendant Armstrong.  (*See* Affidavit of John F. Alden, Ex. A ("Settlement Agreement"), at 8.)  The Court raised the specter of concern under Minnesota Rule of Professional Conduct 1.8(i) at the May 22, 2012, hearing. But the issue is not, nor ever has been, placed squarely before this Court. Thus, the Court will not proceed with its own research on the matter and leaves it to defense counsel to determine his obligations.

2

2012. Following the February 9 telephone conference, the Court issued an Order setting forth a timetable to ensure the settlement was completed as contemplated.

While neither party is blameless, it is readily apparent that Defendants and their counsel were exceedingly sluggish in complying with the settlement agreement. Plaintiff was required to prod Defendants and their counsel into producing a share certificate that assigned Defendant Armstrong's shares to Plaintiff, retrieving a guitar case prototype from Baraboo, Wisconsin, and providing a CAD file of the guitar case at issue. (*See, e.g.*, Alden Aff., Ex. E, F, H, J, L.)

At the time Plaintiff filed his motion, he claimed Defendants' compliance with the settlement was deficient due to Defendants' failure to provide a copy of the CAD file, the prototype of the patented product, and the documents required to run the company. Presently, Plaintiff is satisfied that Defendants produced the CAD file that still exists and the prototype. The only remaining issue appears to be production of the documents necessary to govern the corporation and to comply with various tax code provisions.

## II. Discussion

### A. Enforcement of the Settlement Agreement

This Court has the inherent power to enforce a settlement. *Butler v. LeeAnn Chin's Cuisine*, Civ. No. 07-3317 (PJS/JJG), 2008 WL 819767, at *2 (D. Minn. Mar. 25, 2008) (citations omitted). Contract law principles govern the enforcement of settlement agreements. *Sheng v. Starkey Labs, Inc.*, 53 F.3d 192, 194 (8th Cir. 1995). Under Minnesota law, where a contract's language is plain and unambiguous, that language controls the agreement. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 336, 346-47 (Minn. 2003) (citations omitted).

In this case, the settlement agreement is plain and unambiguous. The agreement plainly states: "[The parties] agree to provide whatever other existing documentation or existing

property which may subsequently be needed to effectively carry out the terms of this Agreement." (Settlement Agreement, at 9.) The agreement transfers control of Time Safe from Defendant Armstrong (Armstrong) to Plaintiff establishing a voting trust and assigning Armstrong's shares to Plaintiff, along with the authority to exercise Armstrong's voting rights in the corporation. (*See* Settlement Agreement, at 1, 2 (establishing a voting trust with Plaintiff as trustee); *see also* Settlement Agreement, Ex. A (Voting Trust Agreement).) Additionally, Defendants Armstrong, McInerny, and Charley were required by the settlement agreement to resign from Time Safe's Board of Directors and elect Plaintiff to the Board. (Settlement Agreement, at 2.) Finally, Plaintiff, as trustee, intends to name an initial Board which includes Defendant Charley.

Naturally, any corporate books, records, or documents would be necessary to manage the corporation. Indeed, the corporate records are integral to the everyday operation of a small company, especially when control of the company is changing hands. The settlement agreement calls for the prototype and CAD file to be sent to Defendant Charley. (Settlement Agreement, at 9.) Corporate records were also delivered to Defendant Charley. Defendant says the relevant corporate records are with the prototypes in Mr. Charley's garage. Plaintiff is apprehensive about Defendants' production of all the documents necessary for Time Safe to meet its tax obligations. The Court finds that production of all corporate records are required by Defendants' to meet their obligations under the settlement agreement.

Thus, the Court recommends that to the extent there exists further documentation, aside from that which is in Defendant Charley's garage, Defendants be ordered to produce all documentation, whether in hard copy or electronic format, to Defendant Charley, within seven days of the adoption of this Report and Recommendation by Judge Ericksen.

### B. Attorney's Fees and Sanctions

Plaintiff also seeks attorney's fees as a sanction against Defendants.[2] Plaintiff asks for sanctions based on the Court's inherent power and its contempt power. Sanctions under the Court's inherent power are appropriate when an attorney's conduct "abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). To be sanctionable, the attorney's conduct must "constitute[] or [be] tantamount to bad faith." *VanDanacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1046 (D. Minn. 2000) (alteration in original) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)).

To be held in civil contempt, the Court must determine by clear and convincing evidence that Defendants violated a court order. *See Faegre & Benson, LLP v. Purdy*, 367 F. Supp. 2d 1238, 1243 (D. Minn. 2005) (citing *Chicago Truck Drivers v. Bhd. Labor Leasing,* 207 F.3d 500, 505 (8th Cir. 2000)). After Plaintiff has proved a violation of a court order, Defendants must prove an inability to comply with the order. *Id.* In finding contempt, the Court may order a fine payable to the Court or payment of attorney's fees. *Id.* (citing *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 630, 630-31 (8th Cir. 1984) (per curiam)).

#### 1. Inherent Power

There is no question in the Court's view that the issues in this case became very contentious and personal. Indeed, Plaintiff compared securing a settlement to "trying to walk a drunken man from the curb to the doorstep – you hear a shout, a gurgle, maybe a few murmurs, but just when it seems you're going to make it, he collapses on the lawn." (Pl.'s Mem. Supp. 3.) Defendants, on the other hand, have accused Plaintiff and counsel of being ungracious winners who "enjoy[] psychological victories far more than business successes." (Def.'s Mem. Opp'n 1.)

---

[2] It is unclear whether Plaintiff seeks a sanction against Defendants or their counsel.

These types of personal attacks, plus the irrelevant, inflammatory comments offered at the hearing on this motion illustrate the unfortunate atmosphere in which the parties are litigating.

Leaving aside the rhetoric, it is clear to the Court that while Defendants unnecessarily dragged their feet in fulfilling their obligations under the settlement agreement, the Court does not agree that it has sufficient grounds to find bad faith. Thus, the Court recommends denial of sanctions under its inherent power.

### 2. Contempt

Plaintiff asks the Court to hold Defendants in contempt based on their violation of the Court's February 10, 2012 Order. In the Order, the Court required Defendants to contact Flambeau, Inc., the prototype manufacturer, by February 15, 2012 and arrange for personal retrieval of the prototype by February 22, 2012. Further, the Court required the parties to sign a settlement agreement, if they intended to settle the case, by February 29, 2012.

Defendants have admitted that the prototype guitar case was not retrieved until March 5, 2012, and the settlement agreement was not signed until March 9, 2012. Under *Chicago Truck Drivers*, upon a showing of clear and convincing evidence of a violation, the burden shifts to Defendants to demonstrate an inability to comply with the Order. 207 F.3d at 505.

In this case, Defendants encountered difficulty in convincing the third-party, Flambeau, to cooperate in releasing the prototype to Defendants. In addition, Defendants tried, without success, to secure Plaintiff's agreement to extend deadlines certain deadlines to accommodate Defendants' efforts. Plaintiff undoubtedly had good reason to refuse any extensions, given Defendants' other untimely and imperfect performances. In the end, however, this Court cannot find that their late execution of their obligations rises to the level of contempt of court. *See Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir. 1989) ("Because the contempt power is a

substantial one, it should be used sparingly and not be lightly invoked."). Indeed, Defendants complied with the spirit, if not the letter, of the February 10, 2012 Order by seeking to retrieve the prototype and attempting to secure signatures from each Defendant as soon as practicable. Accordingly, the Court will not recommend a finding of contempt.

### III.     Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion to Enforce Settlement, for Attorney's Fees, and for an Order to Show Cause why Defendants are not in Contempt (ECF No. 58) should be **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Defendants shall produce any other existing documentation which may subsequently be needed to effectively carry out the terms of the agreement to Defendant Charley, with full access by Plaintiff, within seven days of the adoption of this Report and Recommendation by Judge Ericksen; and

    b. Plaintiff's Request for attorney's fees and a finding of contempt should be **DENIED**.

Dated: May 29, 2012                                         s/ *Jeanne J. Graham*
                                                            JEANNE J. GRAHAM
                                                            United States Magistrate Judge

**NOTICE**

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **June 13, 2012**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The district judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the district judge is not required to review a transcript or the district judge directs otherwise.